IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. 3:09-CR-249-D(07) |
| VS. | § | |
| | § | |
| ALICIA CARGILL SMALLWOOD, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Alicia Cargill Smallwood ("Smallwood") has filed several motions challenging the third superseding indictment ("indictment"). For the reasons that follow, the court denies the motions.

I

Smallwood is charged in the indictment with two offenses: in count one with conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349; and in count two with fraud and related activity in connection with electronic mail, in violation of 18 U.S.C. § 1037(a)(2) and (b)(2)(C).[1] The indictment also contains a forfeiture notice in which Smallwood's assets are alleged to be subject to forfeiture upon a conviction of either of the counts in which she is charged. Smallwood has filed three motions seeking relief with respect to the indictment: a motion to dismiss the indictment on grounds of duplicity and

_____

[1]The count also charges that she is guilty of this offense as an aider and abettor under 18 U.S.C. § 2.

multiplicity; a motion to dismiss the indictment on the grounds that it is not "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and is consequently vague and overly broad and fails to state an offense and, alternatively, to strike surplusage in the indictment; and a motion to dismiss count two.  The government opposes the motions.[2]

## II

### *Legal Principles Regarding Indictments*

Because Smallwood's motions challenge the sufficiency of the indictment, the court begins by reviewing pertinent legal principles.

Under Fed. R. Crim. P. 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."  When applying this standard, common sense should prevail over technicalities.  *See* 1 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 123, at 522-23 (4th ed. 2008).  In each count, the indictment "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the

---

[2]The grand jury is authorized, of course, to return a fourth superseding indictment any time before the trial commences. *See, e.g., United States v. Trahan*, 333 Fed. Appx. 818, 819 (5th Cir. 2009) (per curiam) (noting the "long-standing authority holding that a superseding indictment may be filed any time before trial on the merits"); *United States v. Millet,* 559 F.2d 253, 257-58 (5th Cir. 1977) ("This Court has held that a super[s]eding indictment may be returned at any time before a trial on the merits."). To the extent the court identifies in this memorandum opinion and order defects in the indictment that are curable, the government may opt to seek a fourth superseding indictment that removes the deficiencies in the indictment.

defendant is alleged to have violated."  Rule 7(c)(1).  "A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means."  *Id.*

> Rule 7 put an end to "the rules of technical and formalized pleading which had characterized an earlier era."  The complex requirements of common law criminal pleading are now obsolete, harmless imperfections of form are now disregarded, and the fine detail previously demanded at the pleading stage is not longer required.

1 Wright & Miller, *supra*, § 123, at 521-22 (quoting *Russell v. United States*, 369 U.S. 749, 762 (1962)).  Rule 7(c)(1) "is designed to simplify indictments by eliminating unnecessary phraseology which needlessly burdened many indictments under the former practice." *United States v. Debrow*, 203 F.2d 699, 701-02 (5th Cir.), *rev'd on other grounds*, 346 U.S. 374 (1953); *see also United States v. Smith*, 228 F. Supp. 345, 347 (E.D. La. 1964) ("To require an[] extensive recitation of facts in the indictment itself would be favoring form over substance and would ignore both the wording of Rule 7(c) and the intent to simplify the form of indictment expressed by the Advisory Committee on Federal Criminal Rules.").

"Rule 7 eliminates the necessity for the inclusion in an indictment of many of the technical and prolix averments which were required at common law[.]" *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) (en banc).  The drafters of Rule 7(c) aimed to prevent "horrible examples of prolix indictments," to allow simpler indictments, and to eliminate technicalities in the official forms previously required.  *United States v. Trinastich*, 354 F. Supp. 54, 57 (W.D. Mo. 1973) (internal quotation marks and citation omitted); *see also*

*United States v. Carrier*, 672 F.2d 300, 303 (2d Cir. 1982) (noting that Rule 7(c) was designed to eliminate prolix indictments and to encourage simplicity in procedure); *United States v. Linderman*, 20 F.R.D. 459, 460 (D. Mont. 1957) (explaining that the Rule 7(c) requirements for an indictment "constitute[] a compromise between the old prolix document and the extremely short form" (internal quotation marks and citation omitted)).  One matter of concern presented by a verbose and unnecessarily long indictment is that its length may make it impossible or extremely difficult for the defendant to decipher the charges against her or to assert a bar to subsequent prosecutions for the same offense.  *See, e.g., United States v. Strauss*, 285 F.2d 953, 955 (5th Cir. 1960) (affirming dismissal of indictment where it was impossible for court to discover in an extremely verbose indictment a plain, concise, and definite written statement of the essential facts constituting the offense charged); *United States v. Sanders*, 266 F. Supp. 615, 621 (W.D. La. 1967) (addressing motion for severance and noting from facts stated in indictment and government brief that it would be extremely difficult or impossible for defendants to separate proofs as to each count of 50-page prolix and redundant indictment as to each defendant); *United States v. Heinze*, 361 F. Supp. 46, 56 (D. Del. 1973) (holding prolix indictment to be so vague, indefinite, and unclear that it was fatally defective under Rule 7(c) because it failed to inform defendant of the nature and cause of the accusation against him and because it was too unclear to provide defendant protection against being put in jeopardy twice for same offense).  Generally "[a]n indictment that is otherwise good will rarely fail because the drafter was too wordy or long winded."

1 Wright & Miller, *supra*, § 125, at 571.[3]

But even if an indictment is lengthy and needlessly verbose, Rule 7(c) does not mandate that it be dismissed.  Instead, the defendant's proper recourse is to file a motion to strike surplusage from the indictment.  *See, e.g., United States v. McDermot*, 58 F.3d 636, at *5 (5th Cir. 1995) (unpublished opinion) (affirming denial of motion to dismiss indictment as needlessly wordy because defendant cited no authority to support argument that needlessly verbose indictment required dismissal and in light of "ample authority clarifying that a defendant's remedy in the face of a needlessly wordy indictment is a motion to strike surplusage under Rule 7(d)." (citation omitted)); *United States v. N.Y. Great Atl. & Pac. Tea Co.*, 137 F.2d 459, 462-63, 465 (5th Cir. 1943) (decided prior to Rule 7(c)) (reversing dismissal of indictment because, although indictment was too wordy to be a good pleading, it "has the fault not of vagueness and indefiniteness, but of a too detailed pleading of evidence," which did not affect validity of indictment); *United States v. Rehak*, 2008 WL 2828886, at *8 (D. Minn. July 21, 2008) (denying motion to strike surplusage and noting that "while such verbose indictments are not the norm, the Court cannot say they are unheard of, especially in cases alleging a fraudulent scheme."); *United States v. Pilnick*, 267 F. Supp. 791, 795 (S.D.N.Y. 1967) (holding that although indictment was wordy and hardly a model

---

[3]The United States Attorneys' Manual directs that "a mail fraud or wire fraud indictment should contain a reasonably detailed description of the particular scheme the defendant is charged with devising to ensure that the defendant has sufficient notice of the nature of the offense." *See* Dep't of Justice, *United States Attorneys' Manual* § 9-43.100, *Criminal Resource Manual* at 971 (1997) ("USAM"), *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/title9.htm.

pleading, it was sufficient to withstand motion to dismiss because conspiracy and scheme charged were sufficiently set forth to apprise defendant of crimes charged and enable him to assert bar to subsequent prosecutions for same offense).

"The foundational requirement[] of the indictment or information is that it give the defendant fair notice of the charges against him, which means in part that every element of the charged offenses must be stated." 1 Wright & Miller, *supra*, § 123, at 523. Each count must be evaluated separately. *Id.* at 524. The defendant is guaranteed by the Sixth Amendment "to be informed of the nature and cause of the accusation" against her. 1 Wright & Miller, *supra*, § 125, at 542. An indictment has two purposes. First, it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Id.*; *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (noting that one "constitutional requirement[] for an indictment [is] that it contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend"). Second, the indictment "enables [a defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense." 1 Wright & Miller, *supra*, § 125, at 542; *see also Resendiz-Ponce*, 549 U.S. at 108 (noting that second constitutional requirement is that indictment "enable[] [the defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense."). "[T]o be sufficient, an indictment must . . . allege[] every element of the crime charged and in such a way as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in a subsequent proceeding." *United States v. Ramos*, 537 F.3d 439, 459 (5th Cir. 2008).

To determine whether an indictment serves these purposes and is therefore sufficient, the court should consider the indictment in its entirety and be guided by common sense and practical considerations. *See* 1 Wright & Miller, *supra*, § 125, at 545. The indictment must allege every essential element of the offense charged, and the allegations must be direct rather than left to inference. *See id.* at 546-47. An indictment that alleges only the statutory language of the offense charged is "permissible only if either the language itself gives sufficient notice to the accused, or if the language is accompanied by 'such a statement of the facts and circumstances as will inform the accused of the specific offen[s]e.'" *Id.* at 549 (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)).

In sum, "[a]n indictment adequately charges an offense if it (1) enumerates each prima facie element of the charged offense, (2) notifies the defendant of the charges filed against him, and (3) provides the defendant with a double jeopardy defense against future prosecutions." *United States v. McBirney*, 2006 WL 2432675, at *8 (N.D. Tex. Aug. 21, 2006) (Fitzwater, J.) (internal quotation marks and citation omitted), *aff'd*, 261 Fed. Appx. 741 (5th Cir. 2008). "The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986). "Generally, an indictment which follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime of which he is charged." *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) (internal quotation marks and citations omitted); *see also United States v. Hagmann*, 950 F.2d 175, 183 (5th Cir. 1991). Thus "[a]n indictment, so long

as it adequately apprises the defendant of the charge against him and is specific enough to prevent double jeopardy, will not be dismissed unless it fails to contain the essential elements of the offense charged." *United States v. Miller*, 17 F.R.D. 486, 488 (D. Vt. 1955).

Objections to the indictment, besides an objection that the indictment fails to show jurisdiction or to allege a crime, must be raised by motion prior to trial or they are waived. 1 Wright & Miller, *supra*, § 123, at 530-31; *see* Rule 12(e).

III

*Motion to Dismiss the Indictment on Grounds of Duplicity and Multiplicity*

Smallwood moves to dismiss the indictment on the grounds of duplicity and multiplicity.

A

In the instant indictment, directly under the caption[4] for count one, the first paragraph states: "[t]he Grand Jury realleges and incorporates the Introduction and Counts Two through Eight of the Third Superseding Indictment." Indictment at 13, ¶ 1. Similarly, under the caption for count two, the first paragraph states: "[t]he Grand Jury realleges and incorporates the Introduction and Count One of the Third Superseding Indictment." Indictment at 52, ¶ 1.

---

[4]The court's use of the term "caption" is consistent with the USAM. *See* USAM, *supra*, § 9-12.000, *Criminal Resource Manual* at 216 (noting that caption is not part of the body of the indictment); *see also Stillman v. United States*, 177 F.2d 607, 610-11 (9th Cir. 1949) (referring to opening language in the indictment as "caption") .

The caption and the citation sentence[5] of count one and count two indicate the offense charged in each count. *See, e.g.,* Indictment at 52 and 56 (count two caption charges "Fraud and Related Activity in Connection with Electronic Mail Aiding and Abetting (18 U.S.C. § 1037(a)(2), (b)(2)(C) and 18 U.S.C. § 2)," and citation sentence charges "[i]n violation of 18 U.S.C. § 1037(a)(2), (b)(2)(C) and 18 U.S.C. § 2."). In a motion that tends to oversimplify how the prohibitions against duplicity and multiplicity are to be applied, Smallwood maintains that, because count one of the indictment expressly incorporates count two, and because count two expressly incorporates count one, counts one and two are duplicitous because they charge multiple offenses and are multiplicitous because both offenses are charged in two counts. She avers that multiplicitous indictments may result in multiple sentences for a single offense, in violation of the Double Jeopardy Clause, and that a duplicitous indictment places her in danger of being convicted by less than a unanimous jury verdict. She further alleges that count one will confuse jurors because it incorporates several different crimes, and because it involves a total of 19 different defendants with varying degrees of involvement, which makes it significantly likely that the jury might convict her without agreeing unanimously on her guilt of one particular offense.

The government responds that a count is not multiplicitous where the same act or

---

[5]The court derives the term "citation sentence" from Rule 7(c)(1), which provides, in relevant part: "For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." The citation sentence in each count of the instant indictment cites the statute that the defendant or defendants are alleged to have violated.

transaction constitutes a violation of two distinct statutory provisions and each alleged offense requires proof of a fact that the other does not; that each challenged count clearly delineates a specific and separate offense; and that the mere incorporation by reference of a conspiracy count into a substantive count does not constitute multiplicity. The government maintains that an indictment is not duplicitous if it can be read to charge only one violation in each count; that the allegation in a single count of conspiracy to commit several crimes is not duplicitous; and that each challenged count clearly delineates a specific and separate offense. It also contends that the court will instruct the jury and clearly identify what is required to find guilt. The government also posits that Rule 7(c)(1) specifically allows allegations from one count to be incorporated by reference into another count, and that dismissal is unwarranted because the court can instruct the jury or it can strike the language from each count that "realleges and incorporates" another count or counts.[6]

B

An indictment suffers from duplicity when two or more distinct and separate offenses are joined in a single count. *See* 1A Wright & Miller, *supra*, § 142, at 7. "'An indictment may be duplicitous if it joins in a single count two or more distinct offenses.'" *United States*

---

[6]The government does not cite authority for the assertion that the court can strike language from the indictment absent a defendant's motion. Rule 7(d) expressly permits the court to strike language in the indictment on the defendant's motion. And at least one court has held that the court is not permitted to strike language in the indictment *sua sponte*. *See United States v. King*, 174 Fed. Appx. 467, 469 (11th Cir. 2006) (per curiam) ("The Federal Rules of Criminal Procedure do not permit the district court to strike surplusage except on a motion by the defendant.").

*v. Baytank, Inc.*, 934 F.2d 599, 608 (5th Cir. 1991) (citing *United States v. Robin*, 693 F.2d 376, 378 (5th Cir. 1982)).  "'[T]he test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not.'" *United States v. Tucker*, 345 F.3d 320, 337 (5th Cir. 2003) (quoting *United States v. Reedy*, 304 F.3d 358, 363 (5th Cir. 2002)).[7]  But when the indictment charges a conspiracy, it can allege in a single count a conspiracy to commit several crimes without being duplicitous because "'[t]he conspiracy is the crime, and that is one, however diverse its objects.'" *United States v. Lyons*, 703 F.2d 815, 821 (5th Cir. 1983) (citing *Braverman v. United States*, 317 U.S. 49, 54 (1942)).

"In determining whether an indictment is duplicitous, a court must assess whether the indictment *can be read* to charge only one violation in each count."  *United States v. Roman*, 2010 WL 3294221, at *1 (W.D. Tex. Aug. 19, 2010) (emphasis added) (citing *United States v. Sharpe*, 193 F.3d 852, 865 (5th Cir. 1999)).

> The Fifth Circuit distinguishes between "acts" and "offenses" for the purposes of assessing duplicity; more than one "act" may be included within a single count if the acts represent a single, continuing scheme and (1) the indictment adequately notifies the defendant of the charges pending; (2) does not subject the defendant to double jeopardy; (3) does not permit prejudicial evidentiary rulings at trial; and (4) does not allow the defendants to be convicted by a single, non-unanimous verdict.

---

[7]"The vice of duplicity is that there is no way for a jury to convict on one offense and acquit on another offense contained in the same count."  1A Wright & Miller, *supra*, § 142, at 7.  And a "general verdict of guilty will not reveal whether the jury unanimously found the defendant guilty of either offense, both offenses, or guilty of one crime and not guilty of the other."  *Id.*

*Id.* (citing *Sharpe*, 193 F.3d at 870).  Even if the court determines that the indictment is duplicitous because it charges two or more separate and distinct offenses in one count, and that the indictment cannot be read to charge only one offense in each count, "this flaw *does not require dismissal* of the indictment."  1A Wright & Miller, *supra*, § 145, at 94 (emphasis added).  Rather, the court may "require the government to elect the single count on which it plans to rely, and as long as the evidence at trial is limited to only one of the charges in the duplicitous count, the defendant's challenge is likely to fail."  *Id.* at 94-95.  Additionally, the risk that the jury will convict without unanimity on a single charge can be eliminated "if the court instructs the jury that it must find unanimously that the defendant was guilty with respect to at least one distinct act."  *Id.* at 95.  Thus the court's instruction to the jury that, to convict the defendant of a particular offense, it must find unanimously that the defendant committed one distinct act is sufficient to ameliorate any potential prejudice to the defendant of a duplicitous indictment.

C

An indictment suffers from multiplicity if a single offense is charged in several counts.  *See* 1A Wright & Miller, *supra*, § 142, at 10.[8]  But one *act* by the defendant can

---

[8]One danger inherent in a multiplicitous indictment is that, upon conviction, the defendant may be punished multiple times for the same offense, which raises double jeopardy concerns.  *See United States v. Reagan*, 596 F.3d 251, 253 (5th Cir. 2010) ("An indictment is multiplicitous if it charges a single offense in multiple counts, thus raising the potential for multiple punishment for the same offense, implicating the Fifth Amendment double jeopardy clause." (citation omitted)); *Reedy*, 304 F.3d at 363 ("The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." (internal quotation marks and citation omitted)).  Additionally,

constitute a violation of several distinct statutes. *See United States v. Maggitt*, 784 F.2d 590, 599 (5th Cir. 1986) (noting that one *act* by the defendant may "violate two or more statutes and constitute independent offenses."). And an indictment charging several offenses for the same acts is not multiplicitous where conviction under each statute allegedly violated requires "proof of an additional fact which the other does not." *Tucker*, 345 F.3d at 337 (quoting *Reedy*, 304 F.3d at 363).

Like duplicity, multiplicity is not fatal to the indictment and does not require that the court dismiss the indictment. *See* 1A Wright & Miller, *supra*, § 145, at 98; *United States v. Alexander*, 2008 WL 4790125, at *2 (W.D. La. Oct. 31, 2008) ("[M]ultiplicity itself does not require dismissal of an indictment." (citing *United States v. Smith*, 591 F.2d 1105, 1108 (5th Cir. 1979))). Rather, the "[d]efendant can move to have the prosecution elect one of the counts and to have the other counts dismissed," which is within the court's discretion. 1A Wright & Miller, *supra*, § 145, at 98-100; *see also United States v. Saks*, 964 F.2d 1514, 1526 (5th Cir. 1992) (vacating and remanding defendant's conviction and sentence on grounds of multiplicity and remanding case and directing the government to elect the count it wishes to leave in effect).

The practice of charging a single offense in several counts is discouraged by the Federal Rules of Criminal Procedure, but is nonetheless permissible. *Id.* (citing 1A Wright

---

the indictment's implication that several crimes have been committed (where only one crime is alleged but is repeated in several counts) may have an adverse psychological effect on the jury. *See United States v. Smith*, 591 F.2d 1105, 1108 (5th Cir. 1979).

& Miller, *supra*, § 142, at 11-12); *see Smith*, 591 F.2d at 1108 ("One authority takes the

position that charging a single offense in several counts remains permissible, but the federal

rules of procedure are designed to discourage the practice."). Curative jury instructions also

"may under some circumstances adequately avoid prejudice to a defendant faced with

multiplicitous counts[.]" *United States v. Polizzi*, 257 F.R.D. 33, 37 (E.D.N.Y. 2009) (noting

that "once the impression of enhanced criminal activity is conveyed to the jury, the risk

increases that the jury will be diverted from a careful analysis of the conduct at issue, and

will reach a compromise verdict or assume the defendant is guilty." (emphasis, internal

quotation marks, and citation omitted)).

D

Smallwood has not established that the indictment as framed suffers from multiplicity

or duplicity. She cites generally to the prohibitions against multiplicity and duplicity and

argues that the indictment suffers from both by realleging and incorporating other counts.

Nor has the court has found any authority that compels the conclusion that this practice

renders the indictment multiplicitous or duplicitous in any respect. The court has located

several cases, however, that appear to treat the incorporation of *another count* as if were

incorporating *the facts alleged* in the other count.[9] And although the indictment could have

---

[9]*See, e.g., United States v. McBrown*, 149 F.3d 1176, at *3 (5th Cir. 1998)
(unpublished table decision) ("The conspiracy count *incorporated by reference each of the
other counts* as overt acts of the conspiracy." (emphasis added)); *United States v. Hajecate*,
683 F.2d 894, 901 (5th Cir. 1982) ("But this court long ago held that while the specificity
required in an indictment can be achieved by *incorporation of another count*, this
incorporation must be express, not implicit." (emphasis added)); *United States v. Bright*, 630

been framed in a way to avoid this issue—i.e., by explicitly stating that the factual allegations were being incorporated from one count to another[10]—it can be read to support the conclusion that the grand jury intended to do precisely that. For example, the introduction to the indictment precedes all counts and does not itself charge a crime, so the grand jury must have intended to rely on its factual allegations when charging other crimes.

The controlling question is whether the indictment can be read to in a way that it is neither duplicitous or multiplicitous. The court holds that it can. The caption and the citation sentence in each count show that the count charges *one offense* in violation of *one*

---

F.2d 804, 832 (5th Cir. 1980) (noting that count two incorporated by reference count six); *Davis v. United States*, 357 F.2d 438, 440 n.2 (5th Cir. 1966) ("The requisite specificity [of an indictment] can be achieved by *incorporation of another count*, but this must be expressly done." (emphasis added)); *United States v. Davison*, 555 F.2d 1376, 1377 (9th Cir. 1977) ("The *incorporation of counts* by reference is permitted by Rule 7(c)(1)[.]" (emphasis added)); *Parker v. United States*, 252 F.2d 680, 681 (6th Cir.1958) (per curiam) ("With regard to [defendant's] contention that the counts on which he was sentenced refer to a count which was dismissed, it is the rule that the dismissal of a count does not necessarily vitiate later counts making reference to it, if the reference is sufficiently full to incorporate the matter in the later counts."); *United States v. Carriles*, 2010 WL 300357, at *2 (W.D. Tex. Jan. 20, 2010) ("Moreover, nothing in Count Three, Counts One and Two (*incorporated by reference* into Count Three) or the preamble identify [information.]" (emphasis added)).

[10]This problem can be avoided when an indictment is framed like one that the USAM cites with approval. For example, the USAM cites *United States v. Scurlock*, 52 F.3d 531 (5th Cir. 1995), noting that "[t]he device of incorporating *material* from other counts is useful to avoid repetition such as is typical in fraud, conspiracy, and bankruptcy cases." USAM, *supra*, § 9-12.000, *Criminal Resource Manual* at 218. In *Scurlock* two counts in the indictment that charged the offenses of mail fraud incorporated by reference "the factual description set forth" in a prior count charging conspiracy to commit mail fraud. *See Scurlock*, 52 F.3d at 538.

*statute*.[11]  For example, although in count one "[t]he Grand Jury realleges and incorporates the Introduction and Counts Two through Eight of the [indictment]," Indictment at 13, ¶ 1, count one can be read to charge only conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349, as noted in the caption and in the citation sentence, which charges that the alleged acts occurred "[i]n violation of 18 U.S.C. § 1349[.]"  Indictment at 51.[12]  And although count two realleges and incorporates the introduction and count one, count two clearly charges one particular offense in its caption and citation sentence.  On the same basis, the indictment can be read to allege each offense in only one count.

Moreover, the facts alleged in each respective count correspond to the offense charged in the caption and citation sentence for that count.  For example, Smallwood is charged in count two with aiding and abetting fraud and related activity in connection with electronic mail, and under the caption of count two, the indictment alleges facts in support of the charge that the defendants violated this statute.  It alleges that the defendants aided and abetted each other and other persons in knowingly using a protected computer to relay and retransmit

---

[11]By virtue of the captions and citation sentences, Smallwood and her codefendants have sufficient notice of the offense charged in each count.  Thus "[n]o possible confusion could have been created in the defendants' minds as to what the charges were that had been brought against them and as to what the allegations were that they would be required to defend against upon trial."  *United States v. Vanderpool*, 528 F.2d 1205, 1207 (4th Cir. 1975).  "After all, the purpose of the indictment is to *inform fully the defendant of the charge against him*.  This indictment met that test."  *Id.* at 1206-07 (emphasis added).

[12]The citation sentence reads in full: "[i]n violation of 18 U.S.C. § 1349 (18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud))," because in this way it alleges the underlying substantive offenses that are the objects of the alleged conspiracy. *See* Indictment at 51.

multiple commercial electronic mail messages, with the intent to deceive and mislead recipients and internet access services as to the origin of such messages. Indictment at 53, ¶ 6. Thus count two can be read to charge Smallwood only with aiding and abetting fraud and related activity in connection with electronic mail.

Finally, the court can eliminate the potential for jury confusion and prejudice to Smallwood and the other defendants by appropriate jury instructions. By instructing the jury regarding the essential elements of each offense, the court will avoid the vices associated with duplicity and multiplicity.

Accordingly, the court denies Smallwood's motion to dismiss on grounds of multiplicity and duplicity.

IV

*Motion to Dismiss the Indictment and, Alternatively,*
*to Strike Surplusage*

Smallwood moves to dismiss the indictment on the grounds that it is not a plain, concise, and definite written statement of the essential facts constituting the offense charged and is consequently vague and overly broad and fails to state an offense and, alternatively, to strike surplusage in the indictment.

A

Smallwood contends that count one should be dismissed because it lacks a definite statement and fails to state an offense in a clear, definite, and concise manner. She argues generally that the indictment it is not a plain, concise, and definite written statement of the

essential facts constituting the offense charged and that it is vague and overly broad. Reduced to its essence, her contention is this: count one alleges a conspiracy to commit mail and wire fraud by devising a scheme to defraud unspecified entities over a seven year period; the entities she is charged with defrauding are part of the gravamen of the offense; but the indictment refers to these entitles only generically and indefinitely as "telecommunications companies, the lessors of real property, financial institutions, equipment leasing companies, creditors, credit reporting agencies, and service providers." Indictment at 14, ¶ 2. Smallwood specifically contends that the indictment's reference to numerous unnamed businesses improperly includes the entire universe of commercial entities, and that it is imprecise to the point that it does not state an offense; that if it is assumed that count one states an offense, it should be dismissed because it fails to do so in a plain, concise, and definite manner; and that an indictment that is framed so that the gravamen of the alleged conspiracy is vague and overly broad violates due process and the right to be tried only on an indictment returned by the grand jury, because it permits the prosecution to fill in the blanks with respect to unnamed entities at trial.

The government does not appear to respond specifically to this argument.

B

Smallwood has not shown that count one of the indictment should be dismissed on this basis. An indictment that tracks the language of the relevant statute is generally sufficient if it is "'accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which

- 18 -

he is charged.'"  *United States v. Adams*, 314 Fed. Appx. 633, 641 (5th Cir. 2009) (per curiam) (quoting *United States v. Quinn*, 359 F.3d 666, 672-73 (4th Cir. 2004)).   The indictment adequately charges an offense if it "'(1) enumerates each prima facie element of the charged offense, (2) notifies the defendant of the charges filed against him, and (3) provides the defendant with a double jeopardy defense against future prosecutions.'" *McBirney*, 2006 WL 2432675, at *8 (quoting *United States v. Parasiris*, 85 Fed. Appx. 380, 381 (5th Cir. 2004) (per curiam) (unpublished opinion)), *aff'd*, 261 Fed. Appx. 741 (5th Cir. 2008).  "The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Gordon*, 780 F.2d at 1169.

The court need not dismiss an indictment simply because it is long, or because it contains more than a recitation of the essential elements of the offense.  As discussed in § II, Rule 7(c) was intended to eliminate the *necessity* of lengthy and technical indictments based on official forms.   Although prolix indictments can be problematic, *see id.* and cases discussed, Smallwood has cited no authority for the premise that Rule 7(c) *forbids* lengthy indictments *per se*, or that the proper remedy for an unnecessarily lengthy indictment is dismissal.  Rather, as long as the indictment conforms to minimal constitutional standards, a wordy or lengthy indictment will survive a motion to dismiss; that is, as long as the indictment apprises the defendant of the offense with which she is charged and enables her to assert a bar to subsequent prosecution for the same offense, the court should not dismiss the indictment.  The defendant's proper recourse for an unnecessarily lengthy indictment is

to move to strike surplusage, not to move for dismissal of the indictment.  *See McDermot*, 58 F.3d 636, at *5.

The identity of the alleged victim is not an essential element of conspiracy to commit wire or mail fraud.  "Although the offense of wire fraud requires a victim, the victim need not be named in the indictment."  *United States v. Valencia*, 2006 WL 3716657, at *4 (S.D. Tex. Dec. 14, 2006), *aff'd*, 600 F.3d 389 (5th Cir. 2010).  In the case of mail fraud (and by extension the analogous statute proscribing wire fraud), this is because "[t]he focus of the mail fraud statute is upon the use of the mail to further a scheme to defraud, not upon any particular kind of victim."  *United States v. Hatch*, 926 F.2d 387, 392 (5th Cir. 1991) (affirming denial of defendant's motion to dismiss where defendant argued that failure to identify proper legal victim violated his due process rights by hindering his ability to prepare defense).  Moreover, the language of which Smallwood complains does not render count one so general that it fails to state an offense against her.  In fact, the remainder of the introduction and the contents of count one name numerous alleged victims of the conspiracy charged and give many additional and specific details regarding the alleged conspiracy.  And on February 8, 2010 the government filed a Rule 12.4 notice that lists 47 victims of the alleged conspiracy.

Count one is therefore sufficient.  It tracks the language of 18 U.S.C. § 1349, which provides that "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  Count one charges a

conspiracy to commit an offense prohibited by 18 U.S.C. §§ 1341 and 1343.[13]  Count one

also alleges the manner and means of the conspiracy and numerous overt acts committed in

furtherance of the conspiracy.  *Id.* at 14-51, ¶¶ 3-151.  And it adequately alleges the essential

elements of a conspiracy [14] to commit the underlying substantive offenses of wire[15] and mail

---

[13]In count one, the grand jury alleges:

> From at least in or about March 2003 and continuing through in
> or about January 2010, in the Dallas Division of the Northern
> District of Texas and elsewhere, [defendants] and others known
> and unknown to the Grand Jury did unlawfully willfully, and
> knowingly combine, conspire, confederate, and agree among
> themselves, with each other, and with other persons known to
> the Grand Jury, to commit offenses against the United States, to
> wit: to devise a scheme and artifice to defraud and to obtain
> money and property by means of false and fraudulent pretenses,
> representations, and promises, and did knowingly 1) place and
> cause to be placed in any post office and authorized depository
> for mail matter, any matter and thing whatever to be sent and
> delivered by the Postal Service, and deposit and cause to be
> deposited any matter and thing whatever to be sent and
> delivered by any private and commercial interstate carrier, and
> 2) transmit and cause to be transmitted by means of wire, radio,
> and television communication in interstate and foreign
> commerce, any writings, signs, signals, pictures, and sounds; for
> the purposes of executing such scheme and artifice to defraud
> telecommunications companies, the lessors of real property,
> financial institutions, equipment leasing companies, creditors,
> credit reporting agencies, and service providers, for money and
> property having an aggregate value estimated in excess of
> $20,000,000.00.

Indictment at 13-14, ¶ 2.

[14]The essential elements of conspiracy to commit wire and mail fraud are:

> *First*: That the defendant and at least one other person made an

- 21 -

fraud.[16]  The court therefore holds that count one states an offense against Smallwood.

———————————

> agreement to commit the crimes of wire fraud and mail fraud, as charged in the indictment;
>
> *Second*: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and
>
> *Third*: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

Fifth Cir. Dist. Judges Ass'n Pattern Jury Instructions (Criminal Cases) 2.20 (2001) (adapted conspiracy charge for object crime of wire and mail fraud in single instruction).

[15]The essential elements of wire fraud are:

> *First*: That the defendant knowingly created a scheme to defraud . . .;
>
> *Second*: That the defendant acted with a[] specific intent to defraud;
>
> *Third*: That the defendant used interstate wire communications facilities for the purpose of carrying out the scheme; and
>
> *Fourth*: That the scheme to defraud employed false material representations.

*Id.* at 2.60.

[16]The essential elements of mail fraud are:

> *First*: That the defendant knowingly created a scheme to defraud . . .;
>
> *Second*: That the defendant acted with a specific intent to defraud;

- 22 -

## V

### *Alternative Motion to Strike Surplusage*

Smallwood moves in the alternative to strike surplusage from the indictment.

### A

Smallwood maintains that the indictment contains evidentiary assertions and that their inclusion prevents her from challenging their admissibility as evidence at trial, thereby circumventing the rules of evidence and procedure and her right to a fair trial. She also contends that certain phrases and terms in the indictment are irrelevant, prejudicial, and/or immaterial to the offenses charged.[17]

---

*Third*: That the defendant mailed something through the United States Postal Service or a private or commercial interstate carrier for the purpose of carrying out the scheme; and

*Fourth*: That the scheme to defraud employed false material representations.

*Id.* at 2.59.

[17]Smallwood contends that the court can strike prejudicial allegations that are irrelevant or immaterial. The government responds that, to be stricken, surplusage must be irrelevant, immaterial, prejudicial, *and* inflammatory. The "courts have not applied a consistent test" to determine whether to strike allegations in an indictment as surplusage. *See* 1 Wright & Miller, *supra*, § 128, at 643-44. For example, in *United States v. Bullock*, 451 F.2d 884 (5th Cir. 1971), the panel held that to reverse a conviction based on the district court's refusal to strike, the court must be "convinced that the allegedly excessive language was irrelevant, inflammatory, and prejudicial." *Id.* at 888; *see also United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993) ("For language to be struck from an indictment, it must be irrelevant, inflammatory, and prejudicial." (citing *Bullock*, 451 F.2d at 888)). But in *United States v. Hughes*, 766 F.2d 875 (5th Cir. 1985), the panel held that the defendant might compel the deletion of surplusage if the indictment "assert[ed] irrelevant or immaterial facts, particularly those that might prejudice the jury." *Id.* at 879; *see also McDermot*, 58 F.3d 636,

The government responds that the standard for striking surplusage is strictly construed against striking; that the court can strike surplusage only if it is clear that the allegations are immaterial, irrelevant, prejudicial, and inflammatory, and Smallwood has failed to meet this burden; and that Smallwood has failed to cite support for the assertion that the indictment cannot contain evidentiary allegations (particularly since the cases seem to prefer, although they do not require, an evidentiary indictment to advise the defendant of the charged offenses).

## B

The court first addresses generally Smallwood's argument that "evidentiary allegations" in the indictment are improper.  Although an indictment *need not* set forth the evidentiary details of the offenses charged, *see, e.g., United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991); *see also United States v. Williams*, 679 F.2d 504, 508 (5th Cir. 1982) (noting that Rule 7(c) "does not mean that the indictment must set forth facts and evidentiary details necessary to establish each of the elements of the charged offense."), there is no *prohibition* against pleading "evidentiary allegations," and Smallwood has cited none.  The indictment is not evidence, and the government will be required to establish the admissibility

---

at *5 (holding that purpose of Rule 7(d) is "to protect the defendant against prejudicial allegations of irrelevant or immaterial facts." (citation omitted)).  The court will apply the earlier standard set out in *Bullock*.  To the extent that *Bullock* and *Hughes* conflict, the court will follow *Bullock*.  "It is axiomatic in the Fifth Circuit that in the case of conflicting panel opinions, the earlier one controls, because one panel of the Fifth Circuit may not overrule another."  *MCI Telecomms. Corp. v. United Showcase, Inc.*, 847 F. Supp. 510, 512 (N.D. Tex. 1994) (Fitzwater, J.) (citing *In re Dyke*, 943 F.2d 1435, 1442 (5th Cir. 1991)).

of evidence at trial, despite what the indictment alleges.  As the court explains in § V(C), the remedy for the complaints Smallwood advances is found in Rule 7(d), which empowers the court to strike as surplusage any allegations that are irrelevant, inflammatory, and prejudicial. The court will address in § V(D)(1)-(10) whether it should strike on this basis any allegations that Smallwood challenges.  The court therefore denies her motion to dismiss to the extent she seeks this relief based on the inclusion of "evidentiary allegations" in the indictment.[18]

## C

Smallwood requests that the court strike specific allegations from the indictment. Under Rule 7(d), the court can strike surplusage from an indictment on a defendant's motion. *See* Rule 7(d); *see also* 1 Wright & Miller, *supra*, § 128, at 641.  The court can treat as surplusage "the allegation of additional facts beyond those which comprise the elements of the crime[.]" *Valencia*, 600 F.3d at 432.  But the mere presence of surplusage is not fatal to the validity of the indictment.  And although "Rule 7(c)(1) requires that the indictment contain the essential facts constituting the offense, that does *not* mean that all other language should be stricken from the indictment." *United States v. Alexander*, 2008 WL 2130185, at *3 (W.D. La. May 18, 2008).  "The purpose of [Rule] 7(d) is to protect the defendant against prejudicial allegations of irrelevant or immaterial facts."  1 Wright & Miller, *supra*, § 128 at 641.  "If, for example, the government asserts irrelevant or immaterial facts, particularly those that might prejudice the jury, the defendant may compel their deletion." *United States*

---

[18]The court also denies Smallwood's motion to dismiss count one or the entire indictment on the basis that the indictment is an "evidentiary indictment."

- 25 -

*v. Hughes*, 766 F.2d 875, 879 (5th Cir. 1985).  "[P]rosecutors have been known to insert [unnecessary facts] for 'color' or 'background' hoping that these will stimulate the interest of the jurors."  *United States v. Johnson*, 1999 WL 551332, at *1 (E.D. La. June 10, 1999). The court can strike as surplusage any irrelevant language that is unduly inflammatory and prejudicial in that it "serve[s] only to inflame the jury, confuse the issues, and blur the elements necessary for conviction[.]"  *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971).  The court can also strike "[i]ndirect expressions, implied allegations, argumentative statements, and uncertainty due to generalizations in language[.]"  *United States v. Williams*, 203 F.2d 572, 574 (5th Cir. 1953).

In sum, a motion to strike surplusage should be granted only if it is clear that the allegations are (1) irrelevant to the offenses charged, (2) prejudicial, and (3) inflammatory.[19] *See Bullock*, 451 F.2d at 888.  But the court will not strike allegations that are *relevant*, no matter how prejudicial or inflammatory they may be to the defendant.  In other words, allegations must be both irrelevant *and* prejudicial to be stricken.  *See, e.g., United States v. Vogel*, 2010 WL 2465359, at *1 (E.D. Tex. May 21, 2010) ("[W]hen information in an indictment is relevant to the charged offense, it should not be stricken, regardless of how prejudicial it may be." (citations omitted)); *Alexander*, 2008 WL 2130185, at *2 ("[I]f the allegation is admissible and relevant to the charge, then regardless of how prejudicial, the court should not strike the language." (citation omitted)); Rule 7(d) Advisory Committee's

---

[19]*See* explanation of the court's use of this particular phrasing, *supra* note 17.

Note to 1944 enactment ("This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial."). And the "mere fact that information in an indictment does not constitute an element of the charged offense does not require that it be stricken." *Alexander*, 2008 WL 2130185, at *2. Thus the court should first determine if the challenged allegations are relevant to the offenses charged. If a challenged allegation is irrelevant, only then will the court determine whether the allegation is prejudicial and inflammatory.

The decision to strike surplusage lies within the discretion of the district court, "which may reserve judgment on the motion until after the presentation of evidence at trial." 1 Wright & Miller, *supra*, § 128 at 641-42. And the standard by which the court should evaluate whether to strike surplusage is "exacting." *See Bullock*, 451 F.2d at 888. "[C]ourts are often slow to grant a motion to strike surplusage." 1 Wright & Miller, *supra*, § 128 at 647.

### D

### 1

Smallwood moves to strike one alleged overt act on the ground that it is surplusage. She contends that it is at best an evidentiary assertion, that including it in the indictment improperly forecloses her from challenging its admissibility as evidence at trial, excuses the government from the requirement that it defend its admissibility under Fed. R. Evid. 403 and 404 and against other objections, and precludes the court from exercising its authority to decide whether it is admissible in evidence, thereby depriving her and the other defendants

of a fair trial.  She quotes Fifth Circuit authority for the premise that when the government

asserts irrelevant or immaterial facts in the indictment, particularly those that might be

prejudicial, a defendant can compel their deletion.[20]

On this basis, Smallwood challenges the following alleged overt act:[21]

> On or about March 12, 2007, defendant Matthew Norman
> Simpson emailed defendant Alicia Nicole Cargill Smallwood
> and directed her to fabricate documents.
>> "I need you to put together an invoice 'from'
>> Chris dated June 23, 2006, with the work done as
>> 'database repair caused by power outage on 6/22.'
>> Make it 6 hours at $500 per hour.  I also need an
>> invoice from May 2006 for Union Datacom
>> showing at least $6,000 in charges.  Put in a
>> charge for bandwidth of $4,000 and make the rest
>> voip."
> Simpson then submitted the documents prepared by Smallwood
> as part of ColoExchange's claim to Zurich.

*Id.* at 20-21, ¶ 32 (bold font omitted).

> Based on the fraudulent claim, Zurich issued a settlement check
> to defendant Matthew Norman Simpson doing business as
> ColoExchange for in excess of $31,000.

*Id.* at 21, ¶ 33 (bold font omitted).

---

[20]*See* explanation for the standard the court applies for striking surplusage, *supra* note 17.

[21]Smallwood also mentions two other overt acts that allege that codefendant Matthew Norman Simpson ("Simpson") filed a false unemployment claim and that he supplied false information to a credit reporting agency.  *See* D. Mot. 6 ¶ 9 (indirectly referencing Indictment at 17, ¶ 17; *id.* at 17, ¶ 18).  Because Smallwood is not mentioned in these overt acts, and because her motion is otherwise essentially identical to a similar motion filed by Simpson, the court assumes that this reference is mistaken, and it will not address these overt acts.

The government responds that these alleged acts are relevant and material to the charges alleged in the indictment, and that it intends to present evidence at trial that these acts furthered the conspiracy charged in count one. The government contends that the indictment charges Smallwood with conspiring with named and unnamed coconspirators to defraud victims and to obtain money and property from victims with no intention to pay for property received. It argues that codefendant Matthew Norman Simpson ("Simpson") submitted false documents to the insurance company, and that this act demonstrates Simpson's practice of concealing his identity or association with a company and using coconspirators' companies as references.[22]

Paragraphs 32 and 33 allege an overt act that the government contends is part of the conspiracy charged in count one. "The function of the overt act in a conspiracy prosecution is simply to manifest 'that the conspiracy is at work,' and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence." *United States v. Archbold-Newball*, 554 F.2d 665, 684 (5th Cir. 1977) (citation omitted) (quoting *Carlson v. United States*, 187 F.2d 366, 370 (10th Cir. 1951)). Paragraphs 32-33 are alleged to be "Overt Acts related to ColoExchange." Indictment at 19-21. And Smallwood need not be implicated in the overt act alleged, because "it is only necessary for

_____

[22]The government does not address how the alleged overt acts are relevant to Smallwood. But an overt act committed by Simpson—an alleged coconspirator—is relevant to whether Smallwood is guilty of the conspiracy count since it is only necessary that one of the conspirators, during the existence of the conspiracy, knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

one co-conspirator to participate in an overt act" and the "only function [of an overt act] is to demonstrate that the conspiracy is operative." *United States v. Enstam*, 622 F.2d 857, 867 (5th Cir. 1980) (internal quotation marks and citations omitted).

The court holds that the allegation that Simpson created and submitted a false claim to an insurance company for a power outage, and that Smallwood prepared false documents for Simpson to use for the claim, are relevant to the offense charged and the general scheme alleged. The indictment alleges that Simpson directed Smallwood to create a false invoice for database repair and a false invoice from Union Datacom ("UDC"), that Smallwood did so, and that Simpson submitted these false documents as part of his insurance claim. Simpson submitted the claim on behalf of ColoExchange, one of his companies, to an insurance company claiming that, due to a power outage, the company lost a client, UDC, a company allegedly owned by codefendant Michael Blaine Faulkner ("Faulkner"). In other words, the indictment charges that Simpson falsely obtained an insurance payment by representing to the insurance company that his company lost Faulkner's company as a client because of a power loss. This overt act, if proved, manifests that the alleged conspiracy was at work. For example, this overt act manifests that Smallwood and her codefendants falsely asserted to at least one victim, and profited from the misrepresentation, that their companies were unrelated—i.e., that ColoExchange was unrelated to UDC—when both were involved in the same scheme. Moreover, the insurance company is listed as a victim in the government's Rule 12.4(a)(2) notice filed on February, 8, 2010. The court therefore denies Smallwood's motion to strike ¶¶ 32-33 of count one.

2

Smallwood moves to strike the following italicized language as surplusage, contending that it improperly expands the allegations in an imprecise and indefinite way: (1) that Smallwood, among the conspirators, "[u]sed *various other* companies under their control to act as 'trade references' for the shell companies[,]" Indictment at 15, ¶ 8 (emphasis added); (2) that "defendant Alicia Nicole Cargill Smallwood and others mailed letters to *various* ETS customers requesting payment for services rendered[,]" *id.* at 17, ¶ 19 (bold font omitted; emphasis added); and (3) that defendants "[m]ade false representations in order to obtain property, *such as* computer and telecommunications equipment[,]" *id.* at 14, ¶ 3 (emphasis added).  The government responds that the evidence it is entitled to introduce at trial is not limited to the overt acts alleged in the indictment; in other words, it posits that it need not specify in the indictment every overt act alleged against Smallwood.

Smallwood argues that the terms "various other," "various," and "such as" improperly expand the allegations of the indictment in an indefinite and generic way.  She cites *United States v. Freeman*, 619 F.2d 1112 (5th Cir. 1980), in which the court rejected the defendants' argument that the indictment's reference to events that "included, but were not limited to" listed events vitiated the indictment.  *Id.* at 1118.  *Freeman* held that the district court "should have treated" the "included, but were not limited to" language as surplusage.  *Id.*  But the panel also noted that the defendants' need to know evidentiary details establishing the facts of the offense charged could be satisfied through a bill of particulars.  *Id.*  The *Freeman* panel affirmed the defendants' convictions.  *Id.* at 1124.

A bill of particulars is the appropriate remedy, if any, for *vague or indefinite* language in an indictment.  *See, e.g., United States v. Mayhew*, 337 F.Supp.2d 1048, 1061 (S.D. Ohio 2004) ("The purpose of a bill of particulars is to remedy vague or indefinite language in the indictment in order 'to minimize surprise and assist [the] defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes.'" (quoting *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004))); *see also United States v. Montalvo*, 820 F.2d 686, 691 (5th Cir. 1987) ("The purpose of a bill of particulars is to provide a defendant with more detail about the charges than is provided in the indictment.").  But the purpose of *striking surplusage* in the indictment is "to protect the defendant against prejudicial allegations of irrelevant or immaterial facts."  1 Wright & Miller, *supra*, § 128, at 641.

Therefore, because Smallwood complains that the terms "various others," "various," and "such as" are *indefinite*, and she does not (and cannot in good faith) complain that they are *irrelevant*, the court denies Smallwood's motion to strike these terms as surplusage.  For example, if the court were to strike the term "various" from the allegation that "defendant Alicia Nicole Cargill Smallwood and others mailed letters to various ETS customers requesting payment for services rendered[,]" Indictment at 17, ¶ 19, the allegation would instead read: "defendant Alicia Nicole Cargill Smallwood and others mailed letters to ETS customers requesting payment for services rendered[.]" No purpose would be served by the court's deletion of the phrases of which Smallwood complains; the allegation becomes no more definite by deletion of the term "various."  Smallwood's remedy, if any, lies in a bill

of particulars.

3

Smallwood moves to strike the term "among others" from the allegation that defendants "committed the following overt acts, *among others*[.]" Indictment at 15 (emphasis added). She maintains that the term "among others" imprecisely and indefinitely enlarges the accusations made against her and that such indefiniteness permits the government to constructively amend the indictment, and the jury to convict Smallwood on a ground not charged by the grand jury.

"We have long followed the rule that the government is not *limited* to overt acts pleaded in the indictment in proving a conspiracy; it may show other acts of the conspirators occurring during the life of the conspiracy." *United States v. Elliott*, 571 F.2d 880, 911 (5th Cir. 1978) (emphasis added). And the government is not required to detail all of its proof in the indictment; if it was, "the indictments in many cases would resemble books." *United States v. Climatemp, Inc.*, 482 F. Supp. 376, 392 (N.D. Ill. 1979) (refusing to strike the phrases "among other things" and "among others"), *aff'd sub nom United States v. Reliable Sheet Metal Works, Inc.*, 705 F.2d 461 (7th Cir. 1983). The government must prove that a conspirator committed "at least one of the overt acts alleged in the indictment . . . in furtherance of the conspiracy." *United States v. Brown*, 555 F.2d 407, 419 (5th Cir. 1977); *see also Walker v. United States*, 342 F.2d 22, 25 (5th Cir. 1965) (holding that it was necessary for conspiracy charge to prove the conspiracy between two or more alleged coconspirators "and the commission of at least one of the overt acts alleged in the

indictment"); *see* Fifth Cir. Dist. Judges Ass'n Pattern Jury Instructions (Criminal Cases) 2.20 (2001) (specifying that it is essential element of conspiracy to commit an offense against the laws of the United States that "one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts *described in the indictment*, in order to accomplish some object or purpose of the conspiracy." (emphasis added)).[23]

Smallwood has not established that the phrase "among others" is irrelevant, inflammatory, and prejudicial.  "The prosecution will, of course, be entitled to offer proof of any of the . . . overt acts alleged, and . . . others may be shown, but only as *corroborative of those charged*, but the defendants could not be convicted, unless the prosecution successfully established at least one of the acts alleged."  *United States v. Hosier*, 50 F.2d 971, 971-72 (W.D. La. 1931) (emphasis added).  Therefore, although the government may offer proof at trial of overt acts not alleged in the indictment, in order to prove Smallwood guilty of conspiracy to commit wire and mail fraud, it must prove that Smallwood or one of her alleged coconspirators committed at least one of the overt acts alleged in the indictment. To ensure that the jury only convicts Smallwood based on an overt act charged in the indictment, the court will instruct the jury that the government must prove that one of the conspirators, during the existence of the conspiracy, knowingly committed at least one of the overt acts *described in the indictment*, in order to accomplish some object or purpose of the

---

[23]There are conspiracy offenses that do not require proof of the commission of an overt act.  *E.g.*, 21 U.S.C. § 846; *see also Whitfield v. United States,* 543 U.S. 209, 212 (2005) (noting that the drug conspiracy statute, 21 U.S.C. § 846, does not require proof of an overt act).  The conspiracy offense charged in this case, however, does require such proof.

conspiracy.  Because such an instruction adequately addresses any potential prejudice, the court denies Smallwood's motion in this respect.

4

Smallwood moves to strike the following language as surplusage, contending that it is expansive, undefined, open-ended, unrestricted, and indefinite because it refers to "others" and uses similar terminology to expand the indictment to include any number of unnamed participants: (1) the phrase "and others," Indictment at 17, ¶ 19; *id.* at 24, ¶ 46; (2) the phrase "other conspirators,"[24] *id.* at 37, ¶ 100; *id.* at 45, ¶ 126; and (3) all indefinite references to "persons [or a person or another person] known to the Grand Jury."  *See* D. Mot. 7-8 (citing the parts of the Indictment that she challenges on this ground).  Smallwood maintains that the use of such language violates the rules of pleading, deprives her of notice, and permits the indictment to be constructively amended, in derogation of her rights under the Fifth Amendment and of her Sixth Amendment right to trial by jury.

The government responds that the practice of naming in an indictment individuals who are unindicted coconspirators has been severely criticized by the Fifth Circuit.  It argues that an indictment is sufficient if it alleges that the defendant conspired with another person or persons known, and that the identity of the unnamed persons may be provided through trial evidence, through an informal request to the government, or through a bill of particulars.

"An unindicted conspirator anonymously designated as an 'other person' or as 'John

---

[24]Smallwood challenges the phrase "other conspirators," but the paragraphs she cites state "other coconspirators."  *See* Indictment at 37, ¶ 100; *id.* at 45, ¶ 126.

Doe' may be unmasked in a bill of particulars or at trial." *United States v. Briggs*, 514 F.2d 794, 805 (5th Cir. 1975).  In *Briggs* the court held that naming unindicted coconspirators in an indictment would "officially charg[e] them with crimes while denying them a forum to vindicate their names," which would "circumvent the adversary process which is at the heart of our criminal justice system[.]"  *Id.* at 806.  Smallwood has not established that references to unindicted coconspirators and other persons are surplusage that should be stricken from the indictment.  The court therefore denies this ground of Smallwood's motion.

5

Smallwood moves to strike the allegation that the "property subject to forfeiture includes, but is not limited to" a list of items of property, Indictment at 64, contending that it should be stricken as surplusage.  The government responds that Smallwood misunderstands the purpose of the forfeiture notice in the indictment.  It posits that the purpose is to inform Smallwood of the government's intent to seek forfeiture of any property, constituting proceeds of the offense, used to facilitate the offense or involved in the offense, and any traceable property that includes, but is not limited to, the property itemized in the indictment.

Under Rule 32.2(a), the court cannot enter a judgment of forfeiture unless the indictment notifies the defendant that the government is seeking forfeiture as a remedy.  The indictment "need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks."  Rule 32.2(a).  The purpose of the forfeiture notice is to inform the defendant that the government seeks forfeiture as a remedy.

*See United States v. Loe*, 248 F.3d 449, 464 (5th Cir. 2001). The court can, however, direct that the government file a bill of particulars identifying the specific items of property that it asserts are subject to forfeiture. *See, e.g, United States v. Vasquez-Ruiz*, 136 F.Supp.2d 941, 944 (N.D. Ill. 2001). Because Rule 32.2(a) does not require that the indictment identify the specific property that the government seeks to forfeit, the court denies Smallwood's motion in this respect.

6

Smallwood moves to strike as surplusage the entire introduction to the indictment, contending it is surplusage because it is simply a narrative or makes assertions about the law that are not elements of the offense. The government responds that the introduction provides guidance to the defendants and to the jury and will assist the jury and the court in understanding the allegations and the evidence presented at trial.

The introduction is not irrelevant to the offenses charged. It provides background information on the defendants and entities allegedly involved in the conspiracy, and it may assist the jury in understanding the nature of the charge of conspiracy to commit wire and mail fraud. *See, e.g, United States v. Oliver*, 2008 WL 2511751, at *3 (N.D. Tex. June 23, 2008) (Fitzwater, C.J.) (denying motion to strike surplusage addressed to portion of indictment describing background of Texas Workforce Commission and how unemployment insurance benefits are paid to claimants), *aff'd on other grounds*, 630 F.3d 397 (5th Cir. 2011). And Smallwood has not demonstrated that the allegations she challenges are irrelevant, inflammatory, and prejudicial. She simply asserts that the entire introduction is

surplusage and should be stricken because it is a narrative or it makes assertions about the law that are not elements of the offense.  Because the standard for striking surplusage requires a showing that the surplusage is irrelevant, inflammatory, and prejudicial,  the court denies Smallwood's motion in this respect.

7

In conjunction with her request to strike the introduction, Smallwood moves to strike as surplusage the definitions in count two, *see* Indictment at 52, ¶¶ 2-5, and footnotes 1-4,[25] *see* Indictment at 3, 35, and 37.  The definitions of count two relate to the offense alleged in that count: fraud and related activity in connection with electronic mail and aiding and abetting.   The challenged paragraphs define SPAM, commercial SPAM, autodialer, robodialer, fax blasting, and broadcast faxing.  Likewise, notes 1-4 define terms relevant to count one: conspiracy to commit wire and mail fraud.  They define short message service, direct inward dialing, digital subscriber line, and termination service.  These definitions and descriptions are relevant to the offenses charged.  As with her challenge to the introduction of the indictment, Smallwood has not demonstrated that the allegations she challenges are irrelevant, inflammatory, and prejudicial.  The court therefore denies Smallwood's motion in this respect.

8

Smallwood moves to strike as surplusage the assertion that "[t]he switches and the

---

[25]Smallwood refers twice to footnote 3, *see* D. Mot. 10, ¶ 15, but it is apparent she is challenging footnote 4 as well.

networks constituted protected computers pursuant to 18 U.S.C. § 1030(e)(2)," Indictment at 2, ¶ 5, contending that this assertion is not relevant to any charge in the indictment because the government has abandoned the charge made in earlier indictments that Smallwood and other defendants violated §1030, and the paragraphs and footnotes that she challenges do not describe an element of the offense nor are they necessary to allege an offense.   The government does not respond to Smallwood's motion in this respect.

Smallwood is charged in count two with fraud and related activity in connection with electronic mail, in violation of 18 U.S.C. § 1037(a)(2).   18 U.S.C. § 1037(a)(2) makes it a violation to knowingly use a *protected computer* to relay or transmit multiple commercial electronic mail messages with the intent to deceive or mislead recipients as to the origin of the messages.   18 U.S.C. § 1037(d)(4) provides that terms not defined in § 1037 are defined by the CAN-SPAM Act of 2003, 15 U.S.C. § 7702(13).   15 U.S.C. § 7702(13) directs that "'protected computer' has the meaning given that term in [18 U.S.C. § 1030(e)(2)(B)]."   The allegation that switches and networks constituted a protected computer under 18 U.S.C. § 1030(e)(2) is therefore relevant to the offense charged in count two, because the indictment is charging that the switches and networks in question constituted a protected computer under 18 U.S.C. § 1030(e)(2).   Smallwood's motion is therefore denied in this respect.

9

Smallwood moves under the same rubric as the preceding challenge to strike ¶¶ 1-12 of the introduction.   She maintains that these paragraphs and the footnotes define terms that are purportedly relevant to the telecommunications industry, and that ¶¶13-44 describe

Federal Communication Commission ("FCC") rules, describe defendants and related entities, and list addresses associated with various defendants.  Smallwood argues that these paragraphs are surplusage because they do not describe an element of the offense.

The government responds that Smallwood's motion does not meet the exacting standard to strike surplusage.  It maintains that it will use and prove at trial the definitions, concepts, and addresses mentioned in the introduction of the indictment.  And the government posits that providing definitions of terms and concepts should assist the jury and the court in understanding the allegations and evidence presented during trial, and that the introduction of the indictment does not broaden the allegations or mislead the defendants.

These parts of the indictment are relevant to an offense charged in the indictment. Paragraphs 1-12 of the introduction define telecommunications, incumbent local exchange carrier, competitive local exchange carrier, digital switches, voice over internet, letter of authority and customer facility assignment, bandwidth, instant messaging, colocation provider, remailer, and domain name, and in general describe how calls are originated and transferred. Paragraph 13 alleges that the FCC adopted rules that require telecommunications companies to pay a percentage of revenues for interstate and international services. Paragraphs 14-37 describe the various entities allegedly used by the defendants in the course of the conspiracy, the acts of these companies, the defendants involved with these companies, and the dates during which the conspiracy involved these companies.  Paragraphs 38-44 list addresses associated with the defendants.

Because Smallwood has failed to show that the paragraphs she challenges are

irrelevant, the court denies this ground of her motion.

10

Finally, Smallwood moves to strike as surplusage an allegation in count one that defendants "allowed other persons known and unknown to the Grand Jury to use these telephone numbers to make numerous calls in violation of telemarketing rules, including calling individuals on the 'do not call list' and calling cellular telephones instead of land lines." Indictment at 21, ¶ 35. Smallwood argues that the statement regarding "telemarketing rules" is surplusage and indefinite, that the "including" language improperly broadens the allegation to include any telemarketing transgression, and that this allegation improperly circumvents the rules governing the admissibility of evidence. She also posits that this surplusage is objectionable because it is inflammatory, may confuse the issues or blur the elements, is merely evidentiary and is included to avoid a challenge to its admissibility, or improperly enables the prosecution to constructively to amend the indictment. The government does not respond specifically to Smallwood's motion in this respect.

The court denies Smallwood's motion to strike in this respect. Even assuming *arguendo* that this language can be interpreted to charge the commission of a crime other than the conspiracy alleged in count one, the court can adequately address this concern by instructing the jury that a violation of telemarketing rules and regulations is not in itself a criminal offense. *See, e.g., United States v. Downs*, No. 3:06-CR-00034-D, jury instruction at 7 (N.D. Tex. June 20, 2007) (Fitzwater, J.) (instructing jury that it had "heard evidence that

the defendant may have violated Federal Aviation Administration regulations.  A violation of a Federal Aviation Administration regulation is not in itself a criminal offense."), *aff'd*, 299 Fed.Appx. 310 (5th Cir. Nov. 6, 2008).  Smallwood is also protected against the introduction of inadmissible evidence by the Federal Rules of Evidence, regardless of the allegations in the indictment.[26]  The court therefore denies this ground of Smallwood's motion.

VI

*Motion to Dismiss Count Two*

Smallwood moves to dismiss count two of the indictment, which charges her with violating 18 U.S.C. § 1037(a)(2) and (b)(2)(C).[27]  She maintains that 18 U.S.C. § 1037 is

---

[26]*See* discussion *supra* § V(B).

[27] 18 U.S.C. § 1037:

> (a) In general. — Whoever, in or affecting interstate or foreign commerce, knowingly —
>
> \*   \*   \*
>
> > (2) uses a protected computer to relay or retransmit multiple commercial electronic mail messages, with the intent to deceive or mislead recipients, or any Internet access service, as to the origin of such messages,
> >
> > \*   \*   \*
> >
> > (5) []shall be punished as provided in subsection (b).
>
> (b) Penalties. — The punishment for an offense under subsection (a) is —
>
> \*   \*   \*
>
> > (2) a fine under this title, imprisonment for not

- 42 -

unconstitutionally vague, overly broad as applied in this case, and unconstitutional under the First Amendment.  She further argues that count two fails to provide fair notice of the crime charged.

A

Count two[28] charges that Smallwood and certain codefendants provided SPAMers with equipment, bandwidth, corporate infrastructure, IP addresses, and domain names. Smallwood challenges this count on three grounds: first, it fails to provide notice and fails to state an offense; second, § 1037(a)(2) and (b)(2) is vague on its face and unconstitutionally overbroad because it chills protected anonymous speech; and third, § 1037(a)(2) and (b)(2)(C) is unconstitutionally vague as applied to Smallwood.

---

> more than 3 years, or both, if —
>
> > (C) the volume of electronic mail messages transmitted in furtherance of the offense exceeded 2,500 during any 24-hour period, 25,000 during any 30-day period, or 250,000 during any 1-year period[.]

[28]Count two alleges, in relevant part:

> [Smallwood] did aid and abet [the codefendants] and other persons known and unknown to the Grand Jury in knowingly using a protected computer to relay and retransmit multiple commercial electronic mail messages, with the intent to deceive and mislead recipients, and any Internet access service, as to the origin of such messages; and the volume of the electronic mail messages transmitted in furtherance of the offenses exceeded 2,500 during any 24-hour period, 25,000 during any 30-day period, and 250,000 during any 1-year period.

Indictment at 53, ¶ 6.

B

1

Smallwood contends that count two fails to provide adequate notice and fails to state an offense.  She maintains that, although some courts have concluded that it is generally sufficient for an indictment to set forth the offense in the words of the statute, the general rule is only permissible when the words themselves fully, directly, and expressly, and without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.  She posits that it is generally sufficient for an indictment to set forth the offense in the words of the statute itself, provided the elements of the offense are delineated and the general statement is accompanied by the specific facts constituting the offense.  Smallwood contends that count two is fundamentally defective because it fails to provide adequate notice of the facts constituting the offense—the alleged relaying and retransmission of commercial email messages with intent to mislead recipients as to the origin of the message—which prevents her from preparing a defense.  She posits that count two does not inform her of any victims and does not state what is alleged to have been deceptive or misleading about the origin, or what the origin was, and that, without knowing which company or companies allegedly sent the emails, what was allegedly deceptive or misleading regarding the origin of such messages, or the identity of the purported victims, she cannot prepare a defense.  Smallwood also complains that count two lacks a definitive time frame in which she allegedly participated in the crime, relying instead on a conclusory assertion that "in or about March 2003 and continuing through or about July 2009" she

allegedly participated with other defendants in committing the offense, which is not definitive enough to allow her to identify what conduct may have constituted the crime. She argues that six years is a significant period, that may involve numerous companies with different technologies and resources, and that, without knowing more specifics regarding time frames and at least which company or companies were allegedly involved, or which computers, and at what locations, and what the allegedly deceptive emails' origins were, it is impossible to prepare a defense or assert her constitutional right to bar further prosecution on grounds of double jeopardy.

The government responds that count two satisfies the constitutional requirement that the indictment set forth the elements of the offense with enough clarity to notify Smallwood of the crime charged and allow her to defend against double jeopardy. It contends that count two provides adequate notice of the crime charged because it follows the language of § 1037(a)(2) and (b)(2), sets forth the elements of the offense, and provides sufficient details to identify the allegedly criminal acts.

2

As explained in § II, an indictment adequately charges an offense if it (1) enumerates each prima facie element of the charged offense, (2) notifies the defendant of the charges filed against him, and (3) provides the defendant with a double jeopardy defense against future prosecutions. The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. Thus so long as an indictment adequately apprises the defendant of the charge

- 45 -

against her and is specific enough to prevent double jeopardy, it will not be dismissed unless it fails to contain the essential elements of the offense charged.  Generally, an indictment which follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime charged.

Count two tracks the language of the statute: it alleges that Smallwood and other defendants, in and affecting commerce, aided and abetted by each other and other persons known and unknown to the grand jury, knowingly used a protected computer to retransmit multiple commercial email messages with the intent to deceive and mislead recipients, and any Internet access service, as to the origin of such messages, and that the volume of these messages exceeded the volume specified in § 1037(b)(2)(C).  Paragraph 6 of count two sets forth the elements of the offense charged and sufficiently apprises Smallwood of the charges against her.  *See Thomas*, 348 F.3d at 82.  The court therefore holds that count two conforms to minimum constitutional standards, and it denies Smallwood's motion on the first ground.

## C

Smallwood also argues that 18 U.S.C. § 1037(a)(2) and (b)(2) is vague on its face and unconstitutionally overbroad because the statute chills protected anonymous speech.

## 1

Smallwood contends that a criminal offense must be defined with sufficient precision that ordinary people can understand what conduct is prohibited; that there is a First Amendment right to advertise, provided the advertisements are not false, deceptive, or misleading; and that the First Amendment protects anonymous speech, and anonymous

commercial speech has been protected.  She cites the Supreme Court of Virginia's decision in *Jaynes v. Commonwealth of Virginia*, 666 S.E.2d 303 (Va. 2008), *cert. denied, Virginia v. Jaynes*, ___ U.S. ___, 129 S.Ct. 1670 (2009), which held that a state statute similar to 18 U.S.C. § 1037(a)(2) and (b)(2)(C) violated the First Amendment because it restricted anonymous speech and was overly broad.  Smallwood contends that the legislative history of the Controlling the Assault of Non-Solicited Pornography and Marketings Act of 2003 (the "CAN-SPAM Act") evinces a primary purpose to prevent dissemination and unwanted receipt of offensive pornographic material; sending so-called spam without disclosure of the origin of the message, which is the essence of the charge in count two, is an exercise that will likely invite arbitrary and discriminatory application; commercial transmitters do not invariably identify their source, but instead often identify a source many times removed from the originating source, and this happens in commerce from hundreds to millions of times daily; the government should not be the one to choose who can use advertising techniques referred to as SPAM and those who cannot; and, barring exceptional circumstance, service providers cannot be held responsible for how their customers use the service or the content of the communications they send.  Smallwood also maintains that the government appears to have conceded that count two relates to SPAM sent by defendants' customers, thus establishing another reason why the statute is unconstitutionally vague since all commercial servers are probably not held to this standard.  She argues that 18 U.S.C. § 1037(a)(2) and (b)(2)(C) is overly broad and chills protected speech because it attempts to regulate the dissemination of commercially protected anonymous free speech and, if a business cannot

advertise in bulk by regular mail or email, it must subcontract for this service, it may not want the subcontractor's name, email address, or any other identifying features in its advertisement or email, the subcontractor would use the business' email address or other information provided by the business in the emails, and the statute would allow the government to conclude arbitrarily that a subcontractor had intentionally violated § 1037(a)(2).  Smallwood asserts that the arbitrary enforcement of the statute would lead to the suppression of advertising, reducing the information available for consumer decisions and thereby defeating the purpose of the First Amendment.

The government responds that the statute is not overbroad because it concerns only commercial speech, to which the overbreadth doctrine does not apply.  It maintains that Smallwood cannot complain of vagueness because her alleged conduct falls clearly within the statute's proscriptions. The government also contends that the statute is not impermissibly vague because it requires the government to prove specific intent to deceive recipients or an access service as to the messages' origin, common definitions apply to the terms "deceive," "mislead," and "origin," and the types of conduct proscribed are clear based on these definitions.

2

On a facial challenge[29] for vagueness, the court first must "determine whether the

---

[29]"A 'facial' challenge, in this context, means a claim that the law is 'invalid *in toto*—and therefore incapable of any valid application.'"  *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 n.5 (1982) (quoting *Steffel v. Thompson*, 415 U.S. 452, 474 (1974)).

enactment reaches a substantial amount of constitutionally protected conduct." *United States v. Clark,* 582 F.3d 607, 612 (5th Cir. 2009) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494-95(1982)). "The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications," including its application to the instant party. *Id.* at 612.

"Although ordinarily '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,'" plaintiffs may make a facial challenge to a statute in the First Amendment context by arguing that "a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *United States v. Williams,* 553 U.S. 285, 304 (2008) (quoting *Vill. of Hoffman Estates,* 455 U.S. at 494).

> The showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate *all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.

*Virginia v. Hicks,* 539 U.S. 113, 118-19 (2003) (internal quotation marks and citations omitted). But because the "overbreadth doctrine is 'strong medicine'" the Supreme Court "ha[s] employed it with hesitation, and then 'only as a last resort.'" *New York v. Ferber,* 458 U.S. 747, 769 (1982) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613 (1973)). Accordingly, overbreadth analysis generally does not apply "where the parties fail to

describe the instances of arguable overbreadth of the contested law." *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 450 n.6 (2008).

Smallwood contends that §§ 1037(a)(2) and (b)(2)(C) impermissibly limit the free speech rights of any person or entity sending messages *en masse* without identifying the sender, including corporations that send mass marketing or advertising emails. By its terms, the statute applies to the transmission of "multiple commercial electronic mail messages." 18 U.S.C. § 1037(a)(2). But "the overbreadth doctrine does not apply to commercial speech." *Nat'l Endowment for the Arts v. Finley,* 524 U.S. 569, 619 n.12 (1998) (quoting *Vill. of Hoffman Estates,* 455 U.S. at 497). Smallwood thus cannot rely on the potential application of these sections to commercial speech as an "instance[] of arguable overbreadth," and the court will not undertake overbreadth analysis where she has not supplied such examples. *See Wash. State Grange*, 552 U.S. at 450 n.6; *see also United States v. Twombly,* 475 F.Supp.2d 1019, 1024 (S.D. Cal. 2007) (denying motion to dismiss indictment under § 1037 for overbreadth).

The court similarly rejects Smallwood's reliance on *Jaynes*. In *Jaynes* the Supreme Court of Virginia invalidated a provision of Virginia law as unconstitutionally overbroad because it "prohibit[ed] the anonymous transmission of all unsolicited bulk e-mails including those containing political, religious or other speech protected by the First Amendment to the United States Constitution." *Jaynes,* 666 S.E.2d at 314. The court held that the statute burdened core political speech and did not satisfy strict scrutiny because it was not narrowly tailored to advance the Commonwealth's stated interest in controlling the transmission of

unsolicited commercial, fraudulent, or otherwise illegal bulk email. *Id.* at 313.  Smallwood argues that this rationale from *Jaynes* applies to § 1037(a)(2) and (b)(2)(C) because these provisions also regulate anonymous speech and do not satisfy strict scrutiny.  But Smallwood does not argue that these provisions regulate the anonymous and unsolicited  transmission of bulk emails outside commercial, fraudulent, or illegal contexts.  And the court will not undertake overbreadth analysis where Smallwood has not supplied arguable instances of substantial overbreadth.  *See Wash. State Grange*, 552 U.S. at 450 n.6.

Smallwood also relies on the legislative history of the CAN-SPAM Act to support her overbreadth argument, contending it evinces a primary purpose of preventing the dissemination and unwanted receipt of offensive pornographic material.  She maintains that the statute is overbroad because it also regulates other types of anonymous and unsolicited bulk email transmissions.  Although "legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity . . . [i]n the absence of a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive." *Love Terminal Partners, L.P. v. City of Dall., Tex.,* 527 F.Supp.2d 538, 558 n.14 (N.D. Tex. 2007) (Fitzwater, J.) (quoting *Burlington N. R.R. Co. v. Okla. Tax Comm'n,* 481 U.S. 454, 461 (1987)).  Here, the language of § 1037 (a)(2) and (b)(2)(C) is conclusive, and the court need not consult legislative history.

The court therefore rejects Smallwood's challenge to 18 U.S.C. § 1037(a)(2) and (b)(2) based on facial vagueness and unconstitutional overbreadth.

- 51 -

D

Smallwood also contends that § 1037(a)(2) and (b)(2)(C) is unconstitutionally vague as applied to her.

1

Smallwood contends in the alternative that, if the court rejects her first challenge to § 1037, it should hold that the statute is unconstitutionally vague as applied to her. She reasons that, assuming she was knowingly involved in transmitting commercial emails in great volume, the statute is unconstitutionally vague as applied because it provides inadequate notice of the proscribed conduct, punishes behavior that someone could not have known was illegal, and encourages subjective enforcement of laws based on arbitrary and discriminatory enforcement by government officers. Smallwood maintains that she could not have known from the statute the circumstances that would cause sending multiple emails to be unlawful, because the Internet is diverse in terms of origin identification, and because multiple emailings may have multiple sources, or origins; "origin" is a broad term, defying easy definition; and there is no clear notice as to the type of conduct that might mislead or deceive someone about the origin of the emailings. She also contends that because the intent element of deceiving or misleading about the emails' origin is vague, and count two as applied to her does not provide content to these elements of the offense, it is vague in its application.

The government responds that the statute is not vague as applied because the government must prove at trial that Smallwood had a specific intent to deceive or mislead

recipients as to the origin of the emailings, and because common definitions apply to the terms Smallwood challenges; the terms "deceive" and "mislead" are not vague because their common definitions evince an intentional misrepresentation or false impression concerning the sender's identity; the term "origin" is not vague because it refers to a source of SPAM messages that includes information about the sender's identity, which senders often attempt to conceal; and that because common definitions apply to the statute's terms, and because Smallwood's alleged conduct falls within the common definitions of these terms, the statute is not vague as applied.

2

"Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright,* 486 U.S. 356, 361 (1988).  "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Powell*, 423 U.S. 87, 92 (1975) (citation omitted).  "[T]o be unconstitutionally vague, a statute must be 'impermissibly vague in all its applications,' including its application to the party bringing the vagueness challenge." *Clark,* 582 F.3d at 612 (quoting *Vill. of Hoffman Estates,* 455 U.S. at 495, and citing *Roark & Hardee LP v. City of Austin,* 522 F.3d 533, 546-47, 551 n.19 (5th Cir. 2008)). To determine whether a statute is vague in all applications, "a reviewing court should examine the complainant's conduct *before* analyzing other hypothetical applications of the law because a [party] who engages in some conduct that is *clearly* proscribed cannot

complain of the vagueness of the law as applied to the conduct of others." *Roark & Hardee,* 522 F.3d at 546 (internal quotation marks and citations omitted).  A law is vague in all its applications when "men of common intelligence must necessarily guess at its meaning." *Clark,* 582 F.3d at 613 (internal quotation marks and citations omitted).

The court therefore begins by reviewing Smallwood's alleged conduct. *Clark,* 582 F.3d at 612.  Smallwood argues that the statutory term "origin" is vague because multiple emailings may have multiple sources or origins, and she could not discern what type of conduct would mislead others as to the origin of an email.  But count two alleges that Smallwood aided and abetted codefendants and others in using a protected computer to relay and retransmit multiple commercial electronic mail messages, with the intent to deceive and mislead recipients, and any Internet access service, as to the origin of such messages; and that the volume of the electronic mail messages transmitted in furtherance of the offenses exceeded 2,500 during any 24-hour period, 25,000 during any 30-day period, and 250,000 during any 1-year period.  Indictment at 53 ¶ 6.  Count two further alleges that the defendants provided SPAMers with equipment, bandwidth, corporate infrastructure, and IP addresses, and domain names from which their customers could send SPAM with the intent to mislead recipients and Internet access services as to the messages' origin by interposing an intermediate sender.  Indictment at 53-54 ¶ 7(a)-(e).  If these allegations are proved, they establish at least one course of conduct that would violate § 1037's proscription of using a protected computer to send multiple commercial electronic mail messages "with the intent to deceive or mislead recipients, or any Internet access service, as to the origin of such

- 54 -

messages[.]" Because Smallwood's alleged conduct is clearly proscribed by the statute, it is not vague as applied to her or impermissibly vague in all of its applications.

The court therefore concludes that Smallwood has failed to show that § 1037(a)(2) and (b)(2)(C) is unconstitutionally vague as applied to her.

*   *   *

The court denies Smallwood's April 4, 2011 motion to dismiss the indictment on grounds of duplicity and multiplicity; April 4, 2011 motion to dismiss the indictment on the grounds that it is not "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and is consequently vague and overly broad and fails to state an offense and, alternatively, to strike surplusage in the indictment; and April 4, 2011 motion to dismiss count two.

**SO ORDERED.**

July 15, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE